UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS INC., | Case No. C-10-3429 CW (JCS) |
| Plaintiffs, | **REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS** |
| v. | **[Docket No. 14]** |
| KEITH LANCE PIACENTE, ET. AL., | |
| Defendant. | |

## I.  INTRODUCTION

In this action brought under the Federal Communications Act, Plaintiff Joe Hand Promotions Inc., ("Plaintiff") brings a Motion for Final Default Judgment ("Motion" or "Default Judgment Motion") against Defendants Keith Lance Piacente, and Seven Sixty Enterprises, LLC ("Defendants") in which Plaintiff seeks default judgment, an award of statutory damages, costs of the suit and attorneys' fees.  Having considered the papers submitted, the arguments of Plaintiff's counsel[1] at the hearing and for the reasons stated below, it is recommended that the Motion be GRANTED.

## II.  BACKGROUND

Plaintiff Joe Hand Promotions is a Pennsylvania corporation with its principal place of business located at 407 East Pennsylvania Avenue, Feasterville, Pennsylvania 19053.  Complaint ("Compl.") ¶ 6.  Plaintiff is a commercial distributor and licensor of sporting events.  Compl. ¶ 12.

---

[1] Defendants did not appear at the hearing on Plaintiff's Motion for Default Judgment.

Plaintiffs filed the Complaint in this action on August 5, 2010. In the Complaint, Plaintiff alleges that Defendant Keith Lance Piacente is an owner and/or operator or person with control and management of the commercial establishment doing business as 760 Cigar Lounge operating at 613 First Street, Suite 107, Brentwood, California 94513. *Id.* ¶ 7. Plaintiff alleges that Defendant Seven Sixty Enterprises, LLC is also an owner and/or operator and/or an individual with control and management of the commercial establishment doing business as 760 Cigar Lounge. *Id.* ¶ 8.

Plaintiff alleges that Joe Hand Promotions purchased the domestic commercial right to broadcast "*The Ultimate Fighting Championship 101: Declaration*" (hereafter "the Program"), which was telecast nationwide on Saturday August 8, 2009. Compl. ¶ 10. Pursuant to contract, Plaintiff entered into sublicensing agreements with various commercial entities throughout North America, including within the State of California, by which Plaintiff granted these entities the right to exhibit the Program within their commercial establishments in the hospitality industry (*i.e.*, hotels, racetracks, casinos, bars, taverns, restaurants and social clubs). *Id.* ¶ 11. Plaintiff further alleges that it has expended "substantial monies marketing, advertising, promoting, administering, and transmitting the Program to its customers." *Id.* ¶ 12.

Plaintiff alleges that Defendants broadcast the program at their establishment, 760 Cigar Lounge, with full knowledge that the Program was not to be intercepted, received or exhibited by entities not authorized to do so. *Id.* ¶ 3, 13. Plaintiff alleges that "such unauthorized interception, reception, publication, exhibition, divulgence, display and/or exhibition by each of the Defendants was done willfully and for the purposes of direct and/or indirect commercial advantage and or private financial gain." *Id.* ¶ 14

On the basis of these allegations, Plaintiff asserts four claims: (1) a violation of the Communications Act of 1934, as amended, 47 U.S.C. § 605, *et seq.*; (2) a violation of The Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, *et. seq.*; 3) conversion; and 4) a violation of California Business and Professions Code § 17200. Plaintiff alleges that as a result of the Defendants' violations of federal and state law, Plaintiff is entitled to statutory damages, reasonable attorneys' fees and costs. *Id.* ¶ 18.

1    Defendants failed to file a responsive pleading or otherwise appear in this action.
2 Declaration of Thomas Riley ("Riley Decl.") ¶2. The clerk entered default of both defendants
3 pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on September 28, 2010. *See* Docket
4 No. 12.

5    Plaintiff now brings a motion for default judgment asking for an award of statutory damages
6 in the amount of $110,000 and that damages be awarded for the tort of conversion in the amount of
7 $900.[2] Plaintiff also seeks attorneys' fees and costs as mandated by 47 U.S.C. § 605(e)(3)(b)(iii).

8    In support of the Default Judgment Motion, Plaintiff filed the declaration of investigator Paul
9 Slay ("Slay") who observed the unlawful exhibition of the Program at the Defendants'
10 establishment, 760 Cigar Lounge on August 13, 2009. In support of its damages request, Plaintiff
11 has also submitted the Supplemental Declaration Thomas P. Riley, in which counsel for Plaintiff
12 advises the Court that an additional action has been brought by Plaintiff Joe Hand Promotions
13 against the same Defendants involving additional allegations of piracy against Defendants. *See Joe*
14 *Hand Promotions, Inc. v. Keith Lance Piacente, et al.*, C-10-2947 WHA, filed July 6, 2010.

## III.  ANALYSIS

### A.  Legal Standard Regarding Entry of Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b). Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. Fed. R. Civ. Proc. 8(b)(6); *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating the general rule that "upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).

---

[2] In the Supplemental Declaration of Thomas Riley (hereafter "Supp. Riley Decl."), submitted in connection with the Motion, Plaintiff asks for $110,900 on the conversion claim. This request conflicts with the request as set forth in the motion, and will be discussed in greater detail below.

3

1  "Granting or denying a motion for default judgment is a matter within the court's discretion." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 2010 WL 2889490, at *2 (C.D. Cal. Jul.19, 2010) (quoting *Elektra Entertainment Group Inc. v. Bryant*, No. CV 03-6381 GAF (JTLx), 2004 WL 783123, at *1 (C.D. Cal. Feb.13, 2004)). The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment:

> (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.1986).

### B.  Application of the *Eitel* Factors

In the present case, the *Eitel* factors weigh in favor of entry of default judgment. Importantly, the second and third *Eitel* factors, which weigh the substantive merit of the plaintiff's claims and the sufficiency of the pleadings to support these claims, indicate that default judgment is appropriate in this case.

In order for these factors to weigh in favor of entering a default judgment, the plaintiff must state a claim upon which it may recover. *Pepsico*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that the allegations in the complaint must state a claim upon which the plaintiffs may recover). 42 U.S.C. § 605 provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S. § 605.

Here, Plaintiff's claim for a violation of 47 U.S.C. § 605 appears to have merit and states a valid claim. Specifically, Plaintiff has alleged that Defendants were not authorized to intercept and exhibit the Program, yet they did so at their commercial establishment, 760 Cigar Lounge, on

August 8, 2009, without paying the requisite licensing fee. *See* Compl. ¶ 13. These allegations and supporting declarations state a claim for a violation of 47 U.S.C. § 605.[3]

Further, Plaintiff's conversion claim appears to have merit and the Complaint is sufficient to state a claim for conversion. Under California law, a claim for conversion has three elements: 1) ownership or right to possession of property; 2) wrongful disposition of the property right of another; and 3) damages. *See G.S Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Plaintiff alleges that it obtained the nationwide distribution rights for the Program, and that Defendants intentionally and unlawfully intercepted the Program and then wrongfully converted it for their own use and benefit. Compl. ¶¶ 10-13. Plaintiff further alleges that Defendants deprived Plaintiff of the license fee to which Plaintiff was entitled and would have received had Defendants obtained a license to broadcast the Program lawfully. *See id.* ¶ 26. Plaintiff explains that its "programming is not and cannot be mistakenly, innocently or accidentally intercepted." Affidavit of Joe Hand ("Hand Aff.") at ¶ 9. Therefore, this factor weighs in favor of granting a default judgment on Plaintiff's conversion claim.

The majority of the remaining *Eitel* factors also weigh in favor of granting default judgment. First, if the Court were to deny the motion, Plaintiff will be left without a remedy given Defendants' failure to appear in, or otherwise defend this action. *Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Second, with regard to the possibility that material facts may be in dispute (*Eitel* 782 F.2d at 1471-72), Defendants have failed to respond in this action; thus, there is an absence of material facts in dispute in the record. Third, there is no evidence in the record that Defendants' failure to appear and otherwise defend was the result of excusable neglect – Plaintiff has properly served the Defendants in this action, and they have failed to appear after being served with the Complaint, indicating that their failure to appear was willful.

---

[3] Although Plaintiff also states claims in the Complaint for a violation of 47 U.S.C. § 553 and a violation of California Business and Professions Code § 17200 *et. seq.*, damages are only sought in the present Motion for Default Judgment for the Defendants' violation of 47 U.S.C. § 605. Therefore, the Court need not reach the question of whether Plaintiff's claims based on 47 U.S.C. § 553 and California Business and Professions Code § 17200 have merit or whether the Complaint states a claim for violations of those sections.

1    One factor that weighs against the entry of default judgment is the amount at stake in the
2 action. Defendants seek the maximum amount available by statute, including an additional
3 $110,000 in compensatory damages for the conversion claim. *See* Supp. Riley Decl. ¶ 6. These
4 damages requests are disproportionate to the harm alleged, and in the case of the conversion claim,
5 lack legal support. This factor therefore weights against entry of default. However, because the
6 majority of the *Eitel* factors weigh in favor of granting default judgment, the Court will address the
7 problems with the Plaintiff's damages request when making its damages recommendations below.
8 *See e.g.*, *J & J Sports Productions, Inc. v. Huezo*, C-09-4906 CW (EDL) (N.D. Cal. March 29,
9 2010).

10   The Court is also mindful of the *Eitel* factor that balances the policy consideration that
11 whenever reasonably possible, cases should be decided upon their merits. *Eitel*, 782 F.2d at 1472.
12 The existence of Rule 55(b) though, indicates that this preference towards disposing of cases on the
13 merits is not absolute. *Pepsico*, 238 F. Supp. 2d at 1177. Here, because Defendants have failed to
14 respond or otherwise defend themselves in this action, deciding the case upon the merits is not
15 possible and this factor is therefore neutral.

16   As discussed above, the majority of the *Eitel* factors weigh in favor of granting the final
17 default judgment. Accordingly, it is recommended that default judgment be entered against the
18 Defendants on Plaintiffs' piracy and conversion claims.

19   **D.   DAMAGES**

20   In a civil action under Section 605, the aggrieved party can recover actual damages, or
21 statutory damages of not less than $1,000 or more than $10,000 for each violation, as the court
22 "considers just." 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II). "A traditional method of determining
23 statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the
24 defendants." *Joe Hand Promotions v. Kim Thuy Ho,* No. C09-01435 RMW (N.D. Cal. Sept.18,
25 2009) (citing cases).

26   In cases where the court finds that the violation was committed "willfully and for purposes
27 of direct or indirect commercial advantage or private financial gain, the court in its discretion may
28 increase the award of damages, whether actual or statutory, by an amount of not more than

6

$100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). The Court shall award full costs, including reasonable attorney's fees, to an aggrieved party that prevails. 47 U.S.C. § 605(e)(3)(B)(iii). Courts typically consider the following factors in determining whether a defendant's willful conduct justifies an award of enhanced damages: "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." *Kingvision Pay-Per-View, Ltd. v. Recio*, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

Plaintiff argues that it is entitled to the maximum statutory damages of $10,000[4] for Defendants' interception and exhibition of the Program, as well as the "enhanced" statutory maximum of $100,000, for a total of $110,000, arguing that because Plaintiff has filed another lawsuit in district court, Defendants are "multiple offenders" and their conduct was willful. *See* Supp. Riley Decl., at ¶ 6.

As explained persuasively by the District Court in another case with very similar facts, however, "[s]everal courts in this district [] have found that an award of the statutory *minimum* is appropriate where, among other things, 'events are broadcast on a single occasion to a small audience, and the plaintiff produces little or no evidence of financial gain.'" *J&J Sports Productions Inc. v. Huezo, et al.*, C-09-4906 CW (Order adopting Report and Recommendation, July 2, 2010) (emphasis added) (*citing Universal Sports Network, Inc. v. Jimenez,* 2002 U.S. Dist.

---

[4] *See, e.g., J & J Sports Productions, Inc. v. Flores*, 2009 U.S. Dist. LEXIS 54676, at *4 (E.D. Cal. June 26, 2009) (awarding $10,000 in damages under 47 U.S.C. § 605 where between thirty-three and thirty-five people were present during the broadcast, and there was no cover charge, but not stating whether the award was for statutory damages alone or whether also included enhanced damages); *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 U.S. Dist. LEXIS 54412, at *10 (E.D. Cal. June 26, 2009) (awarding $10,000 in statutory damages under 47 U.S.C. § 605 where the defendant's establishment had a maximum capacity of fifty people, there were between twenty-three and twenty-nine people there during the broadcast, and there were two televisions); *J & J Sports Productions, Inc. v. Esquivel*, 2008 U.S. Dist. LEXIS 92140, *9. (E.D. Cal. Oct. 20, 2008) (awarding $10,000 in statutory damages under 47 U.S.C. § 605 where the defendant's establishment had a maximum capacity of seventy-five people, there were thirty-five people there during the broadcast, and there was one television); *J & J Sports Productions, Inc. v. George*, 2008 U.S. Dist. LEXIS 85770, *5 (E.D. Cal. Sept. 12, 2008) (awarding $10,000 in damages under 47 U.S.C. § 605 where the defendant's establishment had a maximum capacity of thirty people, there were between eighteen and twenty people there during the broadcast, there was one television and there was no cover charge, but not stating whether the award was for statutory damages alone or whether it also included enhanced damages).

1  LEXIS 17709, *3 (N.D. Cal. Sept. 17, 2002) ("The courts typically have evaluated the extent to
2  which the plaintiff demonstrated the defendant's intent to use the broadcast to realize personal gain,
3  whether the acts of piracy were repeated, and the extent of the rebroadcast. Where events were
4  broadcast on a single occasion to a small audience, and the plaintiff produces little or no evidence
5  of financial gain, courts typically have awarded only the $ 1,000 statutory minimum.")); *see also
6  e.g., J & J Sports Prods. v. Medinarios*, 2008 U.S. Dist. LEXIS 79668, *8 (N.D. Cal. Sept. 25,
7  2008) (awarding $1,000 in statutory damages in case where the defendant played a boxing match in
8  violation of 47 U.S.C. § 605; there were only thirty-five customers in the establishment, no cover
9  charge, no advertising, no increase in cost of beverages, and no evidence that the customers were
10 there solely for the boxing match and no evidence that the defendant was a repeat offender);
11 *Garden City Boxing Club, Inc. v. Zavala*, 2008 U.S. Dist. LEXIS 79647, *4 (N.D. Cal. Aug. 18,
12 2008) (awarding $1,000 in statutory damages where the broadcast was made to twenty-four
13 customers who did not pay a cover charge); *Garden City Boxing Club, Inc. v. Tran*, 2006 U.S. Dist.
14 LEXIS 71116, *5, *7 (N.D. Cal. Sept. 20, 2006) (awarding $1,000 in statutory damages in case
15 where the defendant broadcast a boxing match in violation of 47 U.S.C. § 605; the defendant
16 charged a ten dollar cover fee to forty customers present during the telecast; but there was no
17 evidence that the defendant was a repeat offender or that the defendant engaged in any advertising);
18 *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198-99 (N.D. Cal. 2000)
19 (awarding $1,000 in statutory damages where the defendant played a boxing match in violation of
20 47 U.S.C. § 605; there were only sixteen customers in the establishment, there was no evidence that
21 the defendant advertised the match or that a premium was charged for food and drink, there was no
22 cover charge, no evidence that the patrons were in the establishment solely for the match, and no
23 evidence that the defendant was a repeat offender).
24     Plaintiff argues that "at least one Northern District case suggests a change toward the
25 national approach" (of awarding increased damage amounts in similar cases). Motion at 9. In *J &
26 J Sports Productions, Inc. v. Ho,* 2010 WL 3912179 (N.D. Cal. Oct. 5, 2010), the Court noted that
27 the defendant "must have undertaken some specific wrongful actions to intercept the Program" and
28 concluded that "[a]lthough not egregious, the[] facts do suggest that Defendant acted willfully for
commercial advantage and private financial gain." *Id.* The Court in that case noted, however, that

8

"[n]umerous courts in the Northern District of California have found a $5,000 enhancement proper when there was a relatively modest number of patrons and there was a cover charge." *Id.*

Here, there is no evidence that Defendants received significant financial benefits. Mr. Slay declares that Defendants broadcasted the Program on two televisions. *See* "Declaration of Affiant" at 1. Mr. Slay indicates that the occupancy capacity of Defendants' establishment is approximately 25 people, and that there were between 23 and 26 people present while he was there. *Id.* There has been no showing that Defendants advertised the Program to attract patrons, or that any patrons in 760 Cigar Lounge were there solely to view the Program. There was no cover charge and no showing that the cost of beverages was increased during the game. There has been no showing that Defendants have been held liable for signal piracy before.[5]

Plaintiff contends that persistent signal piracy of its programming costs the company, its customers and the community millions of dollars annually. Hand Decl., at ¶¶ 11-12. Plaintiff believes that this results in part from the perceived lack of consequences (including nominal or minimal damage awards by the Courts, especially in the Northern District, which hear its cases) for such unlawful interception and exhibition by the commercial signal pirates. *Id.* Plaintiff therefore requests the maximum allowed under the statute, $110,000. *Id.* at ¶ 13; *see also* Supp. Riley Decl., ¶ 6.

Because Defendants are first time offenders in this case, and have not been shown to have benefitted financially, the Court finds it appropriate to award damages in an amount closer to the minimum statutory damages amount, not the maximum amount sought by Plaintiff here. As there is no evidence of how much Defendants made during the unlawful exhibition of the Program, the Court shall base statutory damages on the cost of the commercial license, or $900. Accordingly, the Court recommends an award of $1,000 in statutory damages pursuant to 47 U.S.C. Section 605(e)(C)(i)(II).

---

[5]As stated previously, Plaintiff submits the Supplemental Declaration of counsel, Thomas P. Riley, as evidence of another case Plaintiff has filed against Defendants in order to argue for increased damages on the ground that the Defendants are "multiple offenders." *See* Docket No. 14 (filed November 3, 2010). Counsel fails to mention in his declaration that the other case against defendants was dismissed voluntarily by the Plaintiff. The Court finds this evidence that Defendants are multiple offenders to be insufficient. *See Joe Hand Promotions, Inc. v. Keith Lance Piacente, et al.*, 10-2497 WHA (Docket No. 16 ) (Plaintiff's voluntary dismissal filed October 14, 2010). *See* Supp. Riley Decl., ¶ 6.

9

With respect to enhanced damages, the Court concludes that enhanced damages are appropriate given the impossibility that Plaintiff's signal could be innocently or accidentally intercepted. *See* Declaration of Joe Hand, Jr. ¶ 9. The Court declines, however, to recommend an award of the maximum amount of enhanced damages or $100,000 as requested by Plaintiff.

As Plaintiff acknowledges, in the Northern District, courts have awarded less than the maximum amount of enhanced damages (or none at all) in cases with facts similar to the present case, concluding that "an establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers." *See Medinarios*, 2008 U.S. Dist. LEXIS 79668, at *8 (awarding $5,000 in enhanced damages); *Zavala,* 2008 U.S. Dist. LEXIS 79647, *4 (awarding $5,000 in enhanced damages); *Tran*, 2006 U.S. Dist. LEXIS 71116, *7 (awarding $5,000 in enhanced damages); *Jimenez*, 2002 U.S. Dist. LEXIS 17709, *4 (declining to award enhanced damages where the plaintiff does not allege repeated violations, there was no advertisement, no charged cover, and the match was shown to twenty-one patrons); *Backman*, 102 F. Supp. 2d at 1198 n. 2 (declining to award enhanced damages because while an absence of cover charge may be more injurious to Plaintiff's business, the absence can also be interpreted as a lack of willfulness).

Even the cases cited by Plaintiff in which enhanced damages were awarded, the courts did not award the statutory maximum (as requested here), and in some cases, it is difficult to determine the exact amount of enhanced damages that the courts awarded. *See, e.g., Joe Hand Prods. v. Haddock*, 2009 U.S. Dist. LEXIS 63048, *5 (E.D. Cal. July 14, 2009) (recommending an award of $25,000 in total damages pursuant to 47 U.S.C. § 605, but not stating how much of the amount was enhanced damages)*; Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008) (awarding $15,000 in enhanced damages where the interception of signal was willful, but there was no evidence of prior violations, no evidence of significant earnings by the defendant, the loss of revenue by the plaintiff for one establishment was minimal, there was no evidence of advertising, and no evidence that the establishment charged a premium for food and drink); *Garden City Boxing Club, Inc. v. Frezza*, 476 F. Supp. 2d 135, 139-140 (D. Conn. 2007) (awarding $10,000 in enhanced damages for the willfulness of the defendant's actions, taking into account awards

granted by other courts in the same district, even though there was no evidence of prior illegal conduct or lost revenue and the monetary benefit obtained by defendant was minimal).

Further, an award of the statutory maximum is rare. In fact, Plaintiff does not cite a single case to this Court where a court has awarded $110,000 for a single violation of 47 U.S.C. § 605. The cases the Court was able to find in which such a sizable amount was awarded do not necessarily support Plaintiff's damages request here because the reasons for the large damages awards are not readily apparent from the courts' opinions. *See e.g., J & J Sports Prods. v. Ferreyra*, 2008 U.S. Dist. LEXIS 75840, *3 (E.D. Cal. Aug. 26, 2008) (recommending an award of $100,000 without analysis of the facts of the case except that the defendant had been sued in another action for commercial signal piracy); *J & J Sports Prods. v. Lang*, 2008 U.S. Dist. LEXIS 112054, *3 (W.D.N.Y. July 22, 2008) (awarding $100,000 in enhanced damages without any analysis of the facts of the case justifying that amount); *Kingvision Pay-Per-View, Ltd. v. Guerra*, 2007 U.S. Dist. LEXIS 98667, *4 (S.D. Tex. Oct. 12, 2007) (awarding $50,000 in enhanced damages without discussing specific facts of the case).

The Court finds that the facts in the present case justify an award of some enhanced damages because Defendants acted willfully in intercepting and broadcasting the Program, (*see* Riley Decl. ¶ 9, Hand Decl., ¶ 9) and displayed the broadcast on two television monitors. Defendants did not impose a cover charge, and there has been no evidence submitted regarding whether Defendants advertised the Program or charged a premium for food and drinks. Further, Plaintiff has submitted no evidence of prior violations by these Defendants. However, because the act of intercepting programming requires an affirmative act by Defendants to do so, and in order to deter future willful violations, the Court recommends an enhanced damages award in the amount of $5,000. Such an award adequately addresses the willfulness of Defendants' illegal conduct and should serve as a deterrent for future violations. *See e.g., Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F.Supp.2d 1179, (D. Colo. 2008) (rejecting plaintiff's request for $100,000 and awarding $5,000 in statutory damages and $15,000 in enhanced damages in order to deter future illegal conduct where no aggravating factors exist).

Plaintiff also seeks damages for its conversion claim in the amount of $110,900. In the Motion, Plaintiff seeks $900, which is the amount Defendants would have been required to pay had

11

1  they licensed the Program from Plaintiff.  *See* Plaintiff's Aff. ¶ 8.  This amount of damages for

2  conversion is appropriate under California Civil Code section 3336.  *See* Cal. Civ. Code § 3336

3  ("The detriment caused by the wrongful conversion of personal property is presumed to be:  First

4  --The value of the property at the time of the conversion, with the interest from that time, or, an

5  amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and

6  proximate result of the wrongful act complained of and which a proper degree of prudence on his

7  part would not have averted.").

8  Plaintiff's counsel's supplemental Declaration, however, amends the Plaintiff's damages

9  request and seeks an additional $110,000 for a total of $110,900 on the conversion claim.  *See* Riley

10  Supp. Decl., 6.  There is no evidence to support Plaintiff's request for an additional $110,000 in

11  compensatory damages on the conversion claim.  Accordingly, the Court recommends awarding

12  Plaintiff $900 in damages for conversion.

### 3. Attorneys' Fees and Costs

14  A plaintiff that prevails on a claim under § 605 is entitled to reasonable attorneys' fees and

15  costs.  47 U.S.C. § 605(e)(3)(B)(iii).  Plaintiff has prevailed on its claim under § 605 and therefore

16  is entitled to fees and costs.  However, Plaintiff did not submit an affidavit in support of its motion

17  for default judgment that details the amount of attorneys' fees and costs that were incurred, nor has

18  counsel for Plaintiff submitted his billing rates.  At oral argument, the Court provided Plaintiff with

19  an opportunity to do so.  Plaintiff has submitted a "Declaration of Plaintiff's Counsel Regarding

20  Attorneys' Fees and Costs."  Plaintiff has submitted billing summaries for the time spent by the

21  attorneys and staff working on this case.  Plaintiff's counsel has incurred $3,621.23 in attorneys'

22  fees in this matter.  The hours spent and rates charged are reasonable, and Plaintiff's counsel should

23  be awarded these fees in full.

24  Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees

25  for service of process "to the extent reasonably required and actually incurred."  Plaintiff has

26  submitted evidence that counsel incurred $600.00 in investigative costs incurred in this matter prior

27  to the initiation of the action; $350.00 in filing fees, as well as $125.00 in costs to serve the

28  defendants.  Plaintiff has submitted no authority for the proposition that investigative fees incurred

prior to the initiation of the lawsuit are taxable costs.  Therefore, the Court does not recommend

awarding Plaintiff's costs of $600.00 in private investigator's fees. *See e.g., Century 21 Real Estate, LLC. v. Heritage Real Estate, Inc.*, 2007 WL 2023552 (N.D. Cal., 2007) ("we note that charges by a private investigator do not constitute taxable costs." (citing Civil Local Rule 54-3). The $350.00 in court filing fees and $125.00 for service of process, totaling $475.00, however, are allowable and should be awarded in full.

**IV.     CONCLUSION**

The Court recommends granting Plaintiff's Motion for Default Judgment and awarding Plaintiff: 1) $1,000 in statutory damages; 2) $5,000 in enhanced statutory damages, and 3) $900 for conversion. In addition, the Court recommends that $$3,621.23 in fees and $475.00 in costs be awarded to Plaintiff.

Any party may serve and file specific written objections to this recommendation within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's Order.

IT IS SO ORDERED.

Dated: April 11, 2011

JOSEPH C. SPERO
United States Magistrate Judge

13